THE PEOPLE *ex rel.* James A. Dunn

*v.*

HARRY HIGBEE.

*Opinion filed April 21, 1898.*

1. BILLS OF EXCEPTION—*newly elected judge should sign bill of exceptions in case tried by predecessor.* It is the duty of a judge to settle and sign a bill of exceptions in a case heard by his predecessor, who refused to sign the same when duly presented because his term of office had expired, as the former, having access to the stenographic report of the evidence and proceedings at trial, and the power to hear witnesses as to what the evidence really was, has all the facilities possessed by the trial judge, except that of personal recollection.

2. SAME—*effect, as to weighing testimony on appeal, where judge did not hear evidence.* Where a bill of exceptions is settled and signed by a judge who did not hear the evidence at the trial, that fact may be made to appear by the judge's certificate, and the case will be determined on appeal without attaching the usual weight given the fact that the trial judge saw and heard the witnesses.

ORIGINAL petition for *mandamus*.

W. E. WILLIAMS, and W. H. CROW, for the relator.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

This is an original proceeding in this court to compel the respondent to sign and seal a bill of exceptions. At the April term, 1897, of the circuit court of Pike county, Jefferson Orr, judge of the circuit court, presiding, James Dunn was indicted, tried and convicted of the crime of murder and his punishment fixed at confinement in the penitentiary for the term of fourteen years. A motion for a new trial was entered and overruled on the 27th day of May, 1897, whereupon judgment was rendered upon the verdict and the relator was sentenced to the penitentiary at Chester for the term fixed by the verdict of the jury. The court extended the time to file a bill of exceptions, on the said 27th day of May, for forty days, within which

time the transcript of the record, with a bill of exceptions, was completed by the official reporter and delivered to counsel for petitioner, who presented the same to the attorney who prosecuted the case, who, after some changes therein, endorsed and approved the bill of exceptions as correct. Afterwards, and on the 17th day of June, the bill of exceptions was presented to Jefferson Orr, who endorsed the same, "Presented this 17th day of June, 1897.—Jeff. Orr, Judge," but, although frequently requested by counsel for the relator, afterward refused to sign and seal said bill of exceptions, and based his refusal on the fact that his term of office had expired. The election for circuit judge was held on the first Monday of June, 1897, and the said Jefferson Orr was not a candidate for the position, but Harry Higbee was elected judge of the circuit court, and after said Jefferson Orr refused to sign the said bill of exceptions, alleging as a reason that his term of office had expired, the counsel for relator requested Harry Higbee, as successor in office as circuit judge to Jefferson Orr, to sign said bill of exceptions, who, doubting his authority and jurisdiction in the matter, refused to sign the same. To the petition so filed in this court, respondent, Harry Higbee, as judge of the circuit court, appeared, and answered that he was not the judge before whom the case was tried; that he entertained doubt as to his jurisdiction, and as to his right and authority, under the law, to sign the bill of exceptions; that the bill of exceptions was duly presented to the trial judge within the time fixed by the trial court for presenting the same and whilst he was yet judge of the circuit court, and that the same had been endorsed as correct by the respective counsel in the cause, and submits himself to the pleasure of the court.

The question presented on this petition and answer is, has the successor to the trial judge the power to settle and sign a bill of exceptions, and is he legally bound to do so? It is clear that the relator did all in his power

to have a transcript, containing the bill of exceptions, duly signed, sealed and settled by the trial judge who presided at the trial at the time of his conviction, and if a successor to a judge whose term of office has expired, or who has resigned or died, has not the power to settle a bill of exceptions, a party to a suit must be prejudiced in his right to a review of the case on appeal or error, or the court must grant a new trial regardless of the fact of the existence of error on the trial. In *People ex rel.* v. *Mc-Connell*, 155 Ill. 192, (appellee being one of the judges of the circuit court of Cook county,) we said with reference to the settling of a bill of exceptions (p. 201): "Without extended discussion of the question and citation of authorities which may be found,  *  *  *  we are of opinion that under the modern practice in our courts the better rule, and the one sustained by perhaps the weight of more recent authority, is, that the succeeding judge presiding in the same court has power to decide a motion for a new trial, and to grant or overrule the same, and enter such judgment or order as shall to justice appertain."

The invention of the system of stenography has made it possible to preserve the testimony of witnesses, and the objections and exceptions thereto, and the motions made in the progress of the trial, with a great degree of accuracy. The benefit resulting from this system has induced legislation in this State by which an official report of the testimony is provided for in the several *nisi prius* courts by stenographers appointed for that purpose, which enables the facts to be so preserved that any successor to a trial judge may settle and determine a bill of exceptions by the various methods, other than recollection, provided for the settlement of a bill of exceptions by the trial judge himself. The trial judge or his successor may use not only the stenographic report, but may hear witnesses for the purpose of determining what was actually the evidence. As was said in *People* v. *McConnell*, *supra* (on p. 202): "Every facility possessed by the trial

judge, except that of personal recollection, is within the power of his successor in office presiding in his place and stead, and no reason can be perceived or exist why the judge to whom the application is made may not in like manner advise himself, and by like means arrive at a correct determination of what a bill of exceptions should contain." Numerous authorities are cited in that case as sustaining this proposition. The objection that the successor who so settles a bill of exceptions did not see and hear the witnesses can have no effect in the determination of the question. The fact that a judge sees and hears the witnesses and observes their manner of testifying may be taken into consideration in an appellate tribunal in determining how the action of the judge is to be considered in weighing testimony, but, as has been frequently held, where evidence is taken in the form of depositions, and the benefit of seeing and hearing the witness and observing his manner on the stand does not exist with the trial court, no weight is attached to any fact in question except that derived from the evidence itself. Where a bill of exceptions is settled, signed and sealed by a judge who did not hear the evidence, that fact may be made to appear by the certificate of the successor to the trial judge, and the case determined by an appellate tribunal on the facts in the record, without any weight being attached to the fact of the trial judge having seen and heard the witnesses.

The bill of exceptions in this case having been endorsed as correct by the counsel, we fail to see that anything could have enlightened the mind of the successor in office upon the question of what occurred on the trial, and it was his duty to hear and determine the question and settle the bill of exceptions,—and this, whether it be regarded as a ministerial or judicial act.

The writ will be awarded.                    *Writ awarded.*